UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RODAMES DEDICATORIA,

        Plaintiff,                              Case No. 1:25-cv-11510

v.                                              Honorable Thomas L. Ludington
                                                 United States District Judge

DOUGLAS A. COLLINS,[1] and
UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS d/b/a ALEDA E. LUTZ
VA MEDICAL CENTER

        Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S EX PARTE EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER WITHOUT PREJUDICE**

Plaintiff Rodames Dedicatoria works as a physician at a Veterans Affairs (VA) clinic in Saginaw, Michigan. But perhaps not for long. On May 27, 2025, the VA is scheduled to hold a hearing to determine whether Plaintiff's clinical privileges should be revoked for his documented "substandard" care. Less than one week before this revocation hearing, Plaintiff filed a federal Complaint against the VA and its Secretary and, simultaneously, filed an *ex parte* emergency motion for a temporary restraining order (TRO). If granted, Plaintiff's requested TRO would enjoin Defendants from holding the revocation hearing until they provide Plaintiff with additional, specific records which, Plaintiff contends, are necessary to his defense. As explained below, Plaintiff's Emergency Motion will be denied without prejudice for failure to follow Civil Rule 65's procedural requirements.

---

[1] Plaintiff sued the "Secretary of the U.S. Department of Veterans Affairs." ECF No. 1 at PageID.1. As of February 5, 2025, the Secretary of Veterans Affairs is Douglas Collins. *See* Press Release, U.S. Dep't of Veterans Affs., Secretary Collins' Message to Veterans and VA Employees (Feb. 5, 2025).

**I.**

As alleged in his unverified Complaint, Plaintiff Rodames Dedicatoria is a physician currently employed at the United States Department of Veterans Affairs ("VA") Aleda E. Lutz VA Medical Center ("VAMC") in Saginaw, Michigan. ECF No. 1 at PageID.3. On February 27, 2025, Julie Gronek—Chief of Staff of the Saginaw VA Healthcare System—notified Plaintiff that the VA was proposing the revocation of his clinical privileges. *See* ECF No. 2 at PageID.30–31. The letter informed Plaintiff that a Focused Clinical Care Review ("FCCR")[2] found that his standard of medical care was "substandard" for the following reasons:

- Multiple episodes of failure to accurately and appropriately document in the medical record
- Failure to provide preventative care on account of failure to complete embedded clinical reminders (such as A1c, statin use in diabetes, age-appropriate cancer screenings and immunizations)
- Failure to notify patients of lab results
- Failure to notify patients of other tests results
- Ongoing conduct and behavioral concerns in violation of [VAMC] by-laws and . . . policies and expectations
- Failure to meet standard quality metrics for patient population/population health (A1c control in diabetes, kidney cancer surveillance in diabetes, statin therapy in diabetes, colon, breast, and cervical screening).

*Id.* at PageID.30.

The VA's February 27, 2025 letter also informed Plaintiff that he had a right to reply, a right to representation, and—under VA policy—a "right to review evidence." *Id.* Indeed, the letter suggests that the VA "enclosed" the entire "evidence file" that it relied on when deciding to propose Plaintiff's privilege revocation. *Id.* The letter further informed Plaintiff that, if his

---

[2] A FCCR "is a clinician-specific comprehensive . . . review of a specific area of practice, a specific period of practice, or both, when there is an identified concern or issue" about a physician. VHA Directive 1190(1), § 6(c)(1) (Nov. 21, 2018) (as amended July 19, 2024). This "retrospective review" is "used to determine what future steps, if any, will be taken," but VA policy provides that "[n]o further action" is taken when "the concerns are not substantiated." *Id.*

privileges were revoked, such revocation would be reported to the "National Practitioners Data Bank" ("NPDB") and Michigan's licensing board. *Id.* at PageID.31.

Through retained counsel, Plaintiff responded to the VA on March 13, 2025. *Id.* at PageID.33.  In his response, Plaintiff (1) "adamantly disagree[d]" with the VA's allegations, (2) requested a hearing, and (3) requested "a complete legible copy of all medical records pertaining to the FCCR and any other cases underlying the . . . recommendation to revoke [his] medical staff privileges." *Id.* at PageID.34–35 (enumerating specific document requests).

On April 1, 2025, Anthony Colòn—the Medical Center Director for the VA Saginaw Healthcare System—notified Plaintiff that he had a right to a "Fair Hearing" regarding his potential revocation. *Id.* at PageID.38–39. Plaintiff responded through counsel and reraised his request for records and a hearing. *Id.* at PageID.41–44. On April 25, 2025, the VA notified Plaintiff that a virtual revocation "Fair Hearing" was scheduled for May 27, 2025. *Id.* at PageID.46–47. The written notice identified all members of the reviewing panel and, again, explained that Plaintiff had the "right to . . . receive all evidence" that the VA "relied upon in bringing the privileging action" and indicated that such evidence was "enclosed." *Id.* at PageID.46. Finally, the letter notified Plaintiff that a virtual pre-hearing conference would be held on May 20, 2025. *Id.* at PageID.47.

On May 1, 2025, Plaintiff's counsel requested, in writing, that the Fair Hearing be adjourned because he "still [had] not received any of the information and/or documentation" he requested in writing. *Id.* at PageID.50. But the VA responded on May 12, 2025 that Plaintiff had already received, among other evidence, a copy of the FCCR report, VAMC's notice of its intent to report Plaintiff to state licensing board, and the VAMC's "rebuttable memorandum" issued to Plaintiff in reply to his response to the VA's allegations. *See id.* at PageID.55. Thus, the VA

contended Plaintiff had already received the entire "evidence file on which" it recommended revocation. *Id.* Yet Plaintiff responded that this "evidence file" did not include "any copies of the underlying medical records for the patients identified in the FCCR" report, and that he needed these specific records to understand "the data underlying [VAMC's] decision or to seek a review by a third-party expert." *Id.*

But Plaintiff alleges he never received these specific requested records. Indeed, Plaintiff alleges that the VA affirmatively denied his request for additional records at the May 20, 2025 prehearing conference. *Id.* at PageID.17. So, six days before his scheduled Fair Hearing, Plaintiff filed a one-count procedural due process Complaint against the VA and its Secretary. ECF No. 1. Simultaneously, Plaintiff filed an *ex parte* Emergency Motion for a Temporary Restraining Order ("TRO") which—if granted—would enjoin the VA and VAMC from holding Plaintiff's revocation hearing until it provides him the records he believes are "necessary to prepare a meaningful defense—including relevant patient records, the medical staff bylaws, rules and regulations, and applicable policies and procedures[.]" ECF No. 2 at PageID.9.

## II.

"An *ex parte* temporary restraining order is an extraordinary remedy which will not be granted unless the movant clearly shows that such relief is warranted*." Fort Wayne Women's Health Organization v. Brane*, 734 F.Supp. 849, 850 (N.D. Ind. 1990). Indeed, before courts can even consider the merits, the movant must comply with two procedural requirements imposed by Civil Rule 65. First, the movant must "clearly show" through "specific facts in an affidavit or verified complaint" that they will suffer immediate and irreparable injury, loss, or damage before the nonmovant can be heard in opposition. FED. R. CIV. P. 65(b)(1)(A). Second, the movant's attorney must "certify[y] in writing any efforts made" to notify the nonmovant "and the reasons

why [such notice] should not be required." FED. R. CIV. P. 65(b)(1)(B); *see also* E.D. Mich. LR 65.1.

If these two procedural requirements are satisfied, courts turn to the merits. "[T]he purpose of a [temporary restraining order] under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996). In determining whether to issue a TRO, courts consider the following four factors:

(1) whether the movant has a strong likelihood of success on the merits,
(2) whether the movant would suffer irreparable injury absent preliminary injunctive relief,
(3) whether granting the preliminary injunctive relief would cause substantial harm to others, and
(4) whether the public interest would be served by granting the preliminary injunctive relief.

*A & W X-Press, Inc. v. FCA US, LLC*, No. 21-1805, 2022 WL 2759872, at *3 (6th Cir. July 14, 2022); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *ABX Air, Inc. v. Int'l Bhd. of Teamsters*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016).

## III.

Plaintiff's *ex parte* Emergency Motion does not survive the first step. Plaintiff's Complaint, ECF No. 1, is not verified. "A verified complaint must signed . . . under penalty of perjury pursuant to 28 U.S.C. § 1746." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *see also Simmons v. City of Southfield*, 2020 WL 1868774, at *7 (E.D. Mich. Jan. 27, 2020) (noting verified pleadings must "be subscribed in writing as true under penalty of perjury, dated, and in substantially the following form: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and

correct. Executed on (date). (Signature).'"). And Plaintiff has not filed a sworn affidavit—either attached to his unverified Complaint or his *ex parte* Emergency Motion for a TRO—attesting to immediate, irreparable harm. *See generally* ECF Nos. 1; 2. These procedural failures are fatal. *See, e.g.*, *Akers v. Maerkle*, No. 3:20-CV-01107, 2021 WL 5863596, at *2 (M.D. Tenn. Jan. 6, 2021) (denying TRO because plaintiff did "not support[] her request . . . with a sworn affidavit or a verified complaint"); *Snipes v. Presbyterian Church (USA)*, No. 3:25-CV-00346, 2025 WL 992694, at *2 (M.D. Tenn. Apr. 2, 2025) (same).

And even if Plaintiff complied with Rule 65's procedural requirements, this Court cannot meaningfully assess Plaintiff's likelihood of success on the merits because the authority for Plaintiff's claim—and this Court's jurisdiction over them—remains unclear. Plaintiff's Complaint broadly alleges that Defendants—a federal agency and a federal executive official—violated his Fifth Amendment rights. *See* ECF No. 1 at PageID.5. But Plaintiff does not explain—either in his Complaint or his emergency *ex parte* motion—whether the Fifth Amendment provides a private right of action for plaintiffs seeking injunctive relief. Nor does Plaintiff identify any federal statute that would provide such a right. *Cf. Mathews v. Eldridge*, 424 U.S. 319, 326–32 (1976) (finding federal jurisdiction over plaintiff's Fifth Amendment due process claim because a federal statute—42 U.S.C. § 405(g)—authorized federal civil actions arising from the Social Security Commissioner's final decisions).

## IV.

Accordingly, it is **ORDERED** that Plaintiff's *Ex Parte* Emergency Motion for Temporary Restraining Order, ECF No. 2, is **DENIED WITHOUT PREJUDICE**.

- 7 -

**This is not a final order and does not close the above-captioned case**.

Dated: May 23, 2025                                         s/Thomas L. Ludington
                                                                   THOMAS L. LUDINGTON
                                                                   United States District Judge