UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RODAMES DEDICATORIA,

        Plaintiff,                                    Case No. 1:25-cv-11510

v.                                                   Honorable Thomas L. Ludington
                                                    United States District Judge
SECRETARY DOUGLAS A. COLLINS, in his
capacity as Secretary of Veterans Affairs, and
UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS d/b/a ALEDA E. LUTZ
VA MEDICAL CENTER

        Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S SECOND *EX PARTE* EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

        Plaintiff Rodames Dedicatoria works as a physician at a Veterans Affairs (VA) clinic in Saginaw, Michigan. But, on May 27, 2025, the VA is scheduled to hold a hearing to determine whether Plaintiff's clinical privileges should be revoked for his documented "substandard" care. Less than one week before this revocation hearing, Plaintiff filed a federal Complaint against the VA and its Secretary, alleging that the hearing will deprive him of his Fifth Amendment procedural due process if he does not receive certain medical records and other documents that he contends are necessary to his defense. Simultaneously, Plaintiff filed his first *ex parte* emergency motion for a temporary restraining order (TRO). But this Court denied that motion for failure to comply with Rule 65's procedural requirements. So Plaintiff swiftly amended his complaint and filed a second *ex parte*, emergency motion.

        Although Plaintiff's second motion is now procedurally proper, it lacks merit. As explained below, Plaintiff has not shown *immediate*, irreparable harm. Nor has he shown that his broad Fifth

Amendment claim is cognizable—let alone likely to succeed on the merits.

## I.

As alleged, Plaintiff Rodames Dedicatoria is a physician currently employed by the United States Department of Veterans Affairs (VA) Aleda E. Lutz VA Medical Center (VAMC) in Saginaw, Michigan. ECF No. 1 at PageID.3. On February 27, 2025, Julie Gronek—Chief of Staff of the Saginaw VA Healthcare System—notified Plaintiff that the VA was proposing the revocation of his clinical or medical staff privileges to practice at VAMC. *See* ECF No. 2 at PageID.30–31. The letter informed Plaintiff that a Focused Clinical Care Review (FCCR)[1] found that his standard of medical care was "substandard" for the following reasons:

- Multiple episodes of failure to accurately and appropriately document the medical record
- Failure to provide preventative care on account of failure to complete embedded clinical reminders (such as A1c, statin use in diabetes, age-appropriate cancer screenings and immunizations)
- Failure to notify patients of lab results
- Failure to notify patients of other tests results
- Ongoing conduct and behavioral concerns in violation of [VAMC] by-laws and . . . policies and expectations
- Failure to meet standard quality metrics for patient population/population health (A1c control in diabetes, kidney cancer surveillance in diabetes, statin therapy in diabetes, colon, breast, and cervical cancer screening).

*Id.* at PageID.30.

The VA's February 27, 2025 letter also informed Plaintiff that he had a right to reply, a right to representation, and—under VA policy—a "right to review evidence." *Id.* Indeed, the letter suggests that the VA "enclosed" the entire "evidence file" that it relied on when deciding to

---

[1] A FCCR "is a clinician-specific comprehensive . . . review of a specific area of practice, a specific time period of practice, or both, when there is an identified concern or issue" about a physician. VHA Directive 1190(1), § 6(c)(1) (Nov. 21, 2018) (as amended July 19, 2024). This "retrospective review" is "used to determine what future steps, if any, will be taken" but VA policy provides that "[n]o further action" is taken when "the concerns are not substantiated." *Id.*

propose Plaintiff's privilege revocation. *Id.* The letter further informed Plaintiff that, if his privileges were revoked, such revocation would be reported to the "National Practitioners Data Bank" (NPDB) and Michigan's licensing board. *Id.* at PageID.31.

Through retained counsel, Plaintiff responded to the VA on March 13, 2025. *Id.* at PageID.33. In his response, Plaintiff (1) "adamantly disagree[d]" with the VA's allegations, (2) requested a hearing, and (3) requested "a complete legible copy of all medical records pertaining to the FCCR and any other cases underlying the . . . recommendation to revoke [his] medical staff privileges." *Id.* at PageID.34–35 (enumerating specific document requests).

On April 1, 2025, Anthony Colòn—the Medical Center Director for the VA Saginaw Healthcare System—notified Plaintiff that he had a right to a "Fair Hearing" regarding his potential revocation. *Id.* at PageID.38–39. Plaintiff responded through counsel and once again requested specific records and a hearing. *Id.* at PageID.41–44. On April 25, 2025, the VA notified Plaintiff that a virtual revocation "Fair Hearing" was scheduled for May 27, 2025. *Id.* at PageID.46–47. The written notice identified all members of the reviewing panel and, again, explained that Plaintiff had the "right to . . . receive all evidence" that the VA "relied upon in bringing the privileging action" and indicated that such evidence was "enclosed." *Id.* at PageID.46. Finally, the letter notified Plaintiff that a virtual prehearing conference would be held on May 20, 2025. *Id.* at PageID.47.

On May 1, 2025, Plaintiff's counsel requested, in writing, that the Fair Hearing be adjourned because he "still [had] not received any of the information and/or documentation" he requested in writing. *Id.* at PageID.50. But the VA responded on May 12, 2025 that Plaintiff had already received, among other evidence, a copy of the FCCR report, VAMC's notice of its intent to report Plaintiff to state licensing board, and the VAMC's "rebuttable memorandum" issued to

Plaintiff in reply to his response to the VA's allegations. *See id.* at PageID.54–55. Thus, the VA contended Plaintiff had already received the entire "evidence file on which" it recommended revocation. *Id.* Yet Plaintiff responded that this "evidence file" did not include "any copies of the underlying medical records for the patients identified in the FCCR" report, and that he needed these specific records to understand "the data underlying [VAMC's] decision or to seek a review by a third-party expert." *Id.*

But Plaintiff alleges he never received these specific requested records. Indeed, Plaintiff alleges that the VA affirmatively denied his request for additional records at the May 20, 2025 prehearing conference. *Id.* at PageID.17. So, on May 21, 2025, six days before his scheduled Fair Hearing, Plaintiff field a one-count unverified complaint against the VA and its Secretary, broadly alleging that Defendants will violate his Fifth Amendment procedural due process rights at the hearing, assuming they decide to revoke his privileges and do not first provide his specific requested records. ECF No. 1. So, simultaneous to his initial complaint, Plaintiff filed an *ex parte* Emergency Motion for a Temporary Restraining Order (TRO) which—if granted—would enjoin the VA and VAMC from holding Plaintiff's revocation hearing until it provides him the records he believes are "necessary to prepare a meaningful defense—including relevant patient records, the medical staff bylaws, rules and regulations, and applicable policies and procedures[.]" ECF No. 2 at PageID.9.

On May 23, 2025, this Court issued an Opinion and Order denying Plaintiff's emergency TRO motion without prejudice because his complaint was not verified and he did not file an affidavit to support his factual claims, as required by Civil Rule 65. ECF No. 6. This Court also noted that, "even if Plaintiff complied with Rule 65's procedural requirements," it could not meaningfully assess the merits of Plaintiff's broad Fifth Amendment claim because he had not

addressed "whether the Fifth Amendment provides a private right of action for plaintiffs seeking injunctive relief" and had not "identif[ied] any federal statute that would provide such right." *Id.* at PageID.88.

So Plaintiff tries again. Four-and-a-half hours after this Court denied Plaintiff's first *ex parte* motion for a TRO, he filed an Amended Complaint which, unlike his first, is verified under penalty of perjury. ECF No. 7 at PageID.97. Plaintiff then filed a second *ex parte* emergency motion for a TRO. ECF No. 8. This motion is essentially identical to his first, with the exception that the second motion is supported by Plaintiff's Counsel's sworn affidavit. *See id.* at PageID.166–170.

## II.

"An *ex parte* temporary restraining order is an extraordinary remedy which will not be granted unless the movant clearly shows that such relief is warranted." *Fort Wayne Women's Health Organization v. Brane*, 734 F.Supp. 849, 850 (N.D. Ind. 1990). Indeed, before courts can even consider the merits, the movant must comply with two procedural requirements imposed by Civil Rule 65. First, the movant must "clearly show" through "specific facts in an affidavit or verified complaint" that they will suffer immediate and irreparable injury, loss, or damage before the nonmovant can be heard in opposition. FED. R. CIV. P. 65(b)(1)(A). Second, the movant's attorney must "certify[y] in writing any efforts made" to notify the nonmovant "and the reasons why [such notice] should not be required." FED. R. CIV. P. 65(b)(1)(B); *see also* E.D. Mich. LR 65.1.

If these two procedural requirements are satisfied, courts turn to the merits. "[T]he purpose of a [temporary restraining order] under Rule 65 is to preserve the status quo so that a reasoned

resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996). In determining whether to issue a TRO, courts consider the following four factors:

> (1) whether the movant has a strong likelihood of success on the merits,
> (2) whether the movant would suffer irreparable injury absent preliminary injunctive relief,
> (3) whether granting the preliminary injunctive relief would cause substantial harm to others, and
> (4) whether the public interest would be served by granting the preliminary injunctive relief.

*A & W X-Press, Inc. v. FCA US, LLC*, No. 21-1805, 2022 WL 2759872, at *3 (6th Cir. July 14, 2022); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *ABX Air, Inc. v. Int'l Bhd. of Teamsters*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016).

### III.

Beginning with Rule 65's procedural requirements, Plaintiff's Amended Complaint is verified, *see* ECF No. 7 at PageID.97, and his attorney has filed an affidavit supporting his factual allegations. ECF No. 8 at PageID.166–70. Rule 65's notice requirement is also seemingly satisfied, as Plaintiff avers that he informed Defendants of his intent to seek a TRO at their May 20, 2025 administrative prehearing conference. *See id.* at PageID.99–100. But Plaintiff's verified facts do not "clearly show" that he will suffer an "immediate *and* irreparable injury" before Defendants can be heard. *See* FED. R. CIV. P. 65 (emphasis added).

"An injury is irreparable," for TRO purposes, "if it cannot be undone through monetary remedies." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995). To Plaintiff's point, the "financial ruin" of a business or the loss of an entire economic

"enterprise"—like Plaintiff's ability to practice as a physician—is sufficiently "irreparable." *Id.* But not all irreparable injuries suffice. The irreparable injury must be "both certain and immediate." *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) (noting a movant must show "some evidence that the harm has occurred in the past and is likely to occur again"). Plaintiff's alleged injury is neither. His verified facts only show that Defendants will conduct a hearing on May 27, 2025—not that they will revoke his practice privileges at this hearing. True, the record reflects that, based on a FCCR, Plaintiff's privilege revocation is "recommended." *See* ECF No. 8 at PageID.122. But the record also reflects that, at the upcoming hearing, Defendants will employ a three-person panel to freshly review all evidence the FCCR relied on, and will additionally consider Defendants' response, counter-proofs, and witnesses. *Id.* at PageID.138. Moreover, even if Defendants revoke Plaintiff's clinical privileges at the upcoming May 27, 2025 hearing, it seems such revocation would not be final. Indeed, the record reveals that a privilege revocation is subject to internal administrative appeal. *See* ECF No. 2 at PageID.74 (noting VA employees are entitled to "appeal" adverse disciplinary decisions to the U.S. Merit Systems Protection Board). So at this juncture, Plaintiff's injury—although irreparable in theory—is insufficiently "speculative [and] unsubstantiated." *Albino-Martinez v. Adducci*, 454 F. Supp. 3d 642, 649 (E.D. Mich. 2020) (denying TRO because plaintiff's harm was speculative, rather than "certain and immediate").

The three remaining TRO factors further counsel against Plaintiff's requested relief. Even assuming that a Plaintiff's requested injunction would serve the public interest and would not harm others, *see Griepentrog*, 945 F.2d 154–55, Plaintiff has not shown a likelihood of success on the merits. This final factor is the "most important" and is often "determinative" in cases like this,

involving "alleged constitutional violation[s.]" *Breathe v. City of Detroit*, 484 F. Supp. 3d 511, 516 (E.D. Mich. 2020) (citing *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)).

First, Plaintiff has not shown that this Court has jurisdiction to consider his broad Fifth Amendment claim. Federal district courts are courts of limited jurisdiction. "Unlike state trial courts," federal district courts "do not have general jurisdiction to review [all] questions of federal and state law, but only the authority to decide cases that the Constitution and Congress have empowered them to resolve." *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). As this Court explained in its last Opinion & Order, Plaintiff's initial complaint did not explain whether the Fifth Amendment provides a private right of action, nor did Plaintiff's pleadings identify any statute suggesting Congressional empowerment. *See* ECF No. 6 at PageID.88 (noting, for example, that the Supreme Court found federal jurisdiction to consider a plaintiff's Fifth Amendment due process claim in *Mathews v. Eldridge*, 424 U.S. 319, 326–32 (1976) only because a federal statute— 42 U.S.C. § 405(g)—authorized civil suits arising from the Social Security Commissioner's final administrative decisions). In response, Plaintiff amended his Complaint and now suggests that his Fifth Amendment claim is cognizable and reviewable under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). ECF No. 7 at PageID.92, 94. Not so.

For starters, *Bivens* claims must seek damages. *See Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020). Plaintiff does not do so. *See* ECF Nos. 1; 7 (solely seeking injunctive relief and attorney's fees). And even if Plaintiff sought damages, he still has not shown he could succeed on a Fifth Amendment procedural due process *Bivens* claim.

To understand *Bivens*, one must first understand 42 U.S.C. § 1983. In 1871, Congress enacted this statute and provided a private right of action to individuals against *state* officials who

violate their constitutional rights. *See Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). But Congress "did not provide" a similar right "for plaintiffs whose constitutional rights were violated by" *federal* officials. *Id.* Nearly 100 years later, the Supreme Court decided *Bivens* and held that, "even absent statutory authorization," a plaintiff could seek *damages* against federal officials who violated their Fourth Amendment rights. 403 U.S. at 397. Although the Fourth Amendment does not expressly "provide for money damages," the Supreme Court held it does not foreclose such relief, and no "special factors" counseled against judicial intervention. *Id.* at 396–97. So, the Supreme Court fashioned a damages remedy "under general principles of federal jurisdiction." *Ziglar*, 582 U.S. at 131.

After *Bivens*, the Court extended its holding. To that end, the Supreme Court recognized implied causes of action for damages against federal officials who (1) deprived plaintiffs of Fifth Amendment *equal protection* rights, *Davis v. Passman*, 442 U.S. 228 (1979); and (2) subjected plaintiffs to cruel and unusual punishment in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). But, as of 2017, these were the "only cases" in which the Court "approved of an implied damages remedy under the Constitution itself." *Ziglar*, 582 U.S. at 131. And the Supreme Court has explained that expanding *Bivens* beyond these three implied claims is "disfavored." *Ashcrfot v. Iqbal*, 556 U.S. 662, 675 (2009).

So, the modern analysis of a proposed *Bivens* claim involves "two steps." *Egbert v. Boule*, 596 U.S. 482, 492 (2022). First, courts "ask whether the case presents a new *Bivens* context—*i.e.*, is it meaningfully different from the cases in which the Court has implied a damages action." *Id.* (internal quotations omitted) (cleaned up). If not, the claim can only proceed if there are no "special factors" suggesting that Congress is better equipped to "weigh the costs and benefits of allowing a damages action to proceed." *Id.* "If there is even a single 'reason to pause before applying *Bivens*

in a new context,'" a federal court cannot recognize a *Bivens* remedy. *Id.* (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)).

This case presents a new *Bivens* context because no federal court has expanded *Bivens* to imply a cause of action under the Fifth Amendment's procedural due process clause. And every Court to have considered such extension has denied it, finding "special factors" counseled against extension. *See, e.g.*, *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018); *Mays v. Smith*, 70 F.4th 198, 203 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 1008 (2024); *Mathews v. Johnson*, No. 7:22-CV-01091-MHH-NAD, 2024 WL 3073739, at *4 (N.D. Ala. May 20, 2024), *R&R adopted*, No. 7:22-CV-01091-MHH-NAD, 2024 WL 3071070 (N.D. Ala. June 20, 2024). Plaintiff does not argue otherwise. Indeed, despite amending his complaint to allege a *Bivens* claim, Plaintiff does not discuss *Bivens* whatsoever in his renewed motion for a TRO. *See* ECF No. 8. At bottom, Plaintiff has not shown that his proposed claim is even cognizable.

But even if this Court ignored these jurisdictional and cognizability concerns, the merits of Plaintiff's procedural due process claim are less than clear. The elements of a Fifth Amendment procedural due process claim—when cognizable under specific statutes—are: "(1) a life, liberty, or property interest requiring protection . . . and (2) a deprivation of that interest (3) without adequate process." *Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 185 (6th Cir. 2012). Even assuming the May 27, 2025 hearing will deprive Plaintiff of a life, liberty, or property interest, Plaintiff has not shown that the hearing will deprive him of adequate process. At its core, due process requires "notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Garcia v. Fed. Nat. Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). But Plaintiff received three months' notice of the revocation hearing. *See supra* Section I. And the opportunity to be heard seems meaningful. Plaintiff has retained counsel.

*See id.* True, a plaintiff may be deprived of procedural due process if they are unable to access the evidence that the disciplinary entity considers against them. *See Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018). But Plaintiff's Counsel concedes Plaintiff has received this evidence. *See* ECF No. 8 at PageID.147.

Plaintiff instead argues that the provided process is not meaningful if he does not receive *additional*, specific medical records of patients who participated in the FCCR. *Id.* at PageID.100. But why? This Court does not know because Plaintiff does not say. Indeed, it remains entirely unclear what specific patient records Plaintiff seeks, let alone why Plaintiff considers these records "essential," *id.* at PageID.113, and "necessary to prepare a meaningful defense." *Id.* at PageID.119. Without more, this Court cannot conclude that Plaintiff's Fifth Amendment procedural due process claim—even if cognizable—will likely succeed on the merits.

In sum, Plaintiff's renewed *ex parte* Emergency Motion for a TRO will be denied because Plaintiff has not shown immediate irreparable harm, nor a likelihood of success on the merits of his procedural due process claim.

### IV.

Accordingly, it is **ORDERED** that Plaintiff's Second *Ex Parte* Emergency Motion for Temporary Restraining Order, ECF No. 8, is **DENIED**.

**This is not a final order and does not close the above-captioned case**.

Dated: May 27, 2025                                         s/Thomas L. Ludington
                                                                          THOMAS L. LUDINGTON
                                                                          United States District Judge